IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA     :
    :    CRIM. NO. 05-702
    v.     :
    :    CIV. NO. 08-1493
EUGENE PARKER     :


**SURRICK, J.**                             **APRIL  11 , 2014**


## MEMORANDUM

Presently before the Court is Petitioner Eugene Parker's pro se Motion pursuant to 28

U.S.C. § 2255 (ECF No. 78) and Defendant's Amended Motion Pursuant to 28 U.S.C. § 2255

(ECF No 93) filed by Counsel.[1]   For the following reasons, Petitioner's Motions will be denied.

## I.     BACKGROUND

Petitioner Eugene Parker was indicted on charges of possession with intent to distribute

cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts One and Five); possession with intent to

distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Four); possession with

intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) (Count Three);

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §

924(c)(1) (Count Six); and possession of a firearm by a convicted felon, in violation of 18 U.S.C.

§§ 922(g) and 924(e) (Count Seven).  (Indictment, ECF No. 2.)  On April 18, 2006, the jury

---

[1] We address claims found in both the Amended Motion and the pro se Motion.  Pro se
pleadings are subject to a liberal review.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A pro se
complaint, "however inartfully pleaded," is to be held to "less stringent standards than formal
pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Higgs v.
Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

returned a verdict of guilty on Counts Three, Four, Five, and Six.  (Jury Verdict, ECF No. 49.)

The Court then found Petitioner guilty of Count Seven in a bifurcated, stipulated non-jury trial.

(Bench Trial Verdict, ECF No. 50.)  Counts One and Two, which were severed, were dismissed

upon motion by the Government.  (*Id*.)  Petitioner moved for a judgment of acquittal pursuant to

Federal Rule of Criminal Procedure 29, and for a new trial pursuant to Federal Rule of Criminal

Procedure 33.  (Mot. for Acquittal, ECF No. 52.)  These motions were denied.  (ECF No. 56.)

On August 10, 2006, Petitioner was sentenced to 360 months imprisonment, followed by

six years of supervised release.[2]  (Judgment, ECF No. 66.)  Petitioner appealed the judgment of

sentence to the Court of Appeals for the Third Circuit.  (ECF No. 67.)  On December 28, 2006,

Petitioner filed a motion to voluntarily dismiss his appeal pursuant to Federal Rule of Appellate

Procedure 42(b).  On January 22, 2007, the Third Circuit granted Petitioner's motion.  (ECF No.

72.)

In 2008, Petitioner filed a pro se motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255.  (Pet., ECF No. 78[3]).  We dismissed that motion as untimely.

(ECF No. 79.)  Petitioner appealed to the Third Circuit.  The Government subsequently withdrew

its contention that Petitioner's § 2255 Motion was time-barred, stipulated that Petitioner's

Motion should be disposed of on the merits, and the Third Circuit then vacated the Order

---

[2]  Petitioner was determined to be an armed career criminal and a career offender.  He has twelve prior convictions.  Four of those convictions are for distribution or possession with the intent to distribute controlled substances.  Three of the convictions are for firearms violations.

[3]  Petitioner filed two pro se Motions.  The claims found in the first Motion (ECF No. 76) are generally restated in the second Motion (ECF No. 78).  Accordingly, we will refer to the most recent Motion as "Petition" for purposes of this Memorandum.  Since Petitioner attached supplements in the middle of this Petition, we will use the pagination system found on ECF, as opposed to the incomplete page numbering found in the Petition itself.

dismissing Petitioner's Motion as untimely.  *United States v. Parker*, 416 F. App'x 132 (3d Cir.

2011).  Counsel was appointed to represent Petitioner.  (CJA Appointment, ECF No. 92.)

Petitioner then filed the Amended Motion (Pet'r Mem., ECF No. 93.) and the Government filed a

Response.  (Gov't. Resp., ECF No. 94.)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate,

set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of

the Constitution or laws of the United States, or that the court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is

otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under this provision is

generally available "to protect against a fundamental defect which inherently results in a

complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair

procedure."  *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

While the court may in its discretion hold an evidentiary hearing on a Section 2255

petition, *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held

if the "motion and the files and records conclusively show that the prisoner is entitled to no

relief."  28 U.S.C. § 2255(b); *see also United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994).

## III.   DISCUSSION

### A.    Ineffective Assistance of Counsel

#### 1.    Legal Standard

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a

defendant must show that: (1) his attorney's performance was deficient; and (2) the deficient

performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To

establish deficient representation, a defendant must show that counsel's performance "fell below

an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*,

166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). To establish prejudice, a

defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough for the

defendant to show that the errors had some conceivable effect on the outcome of the proceeding."

*Id.* at 693. Rather, "the defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

694. Under *Strickland*, counsel is presumed to have acted within the range of "reasonable

professional assistance," and the defendant bears the burden of "overcom[ing] the presumption

that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id.* at 689 (citation omitted). While a defendant has the right to effective assistance of counsel,

the Constitution does not guarantee the right to a perfect trial. *See Marshall v. Hendricks*, 307

F.3d 36, 85 (3d Cir. 2002) ("[T]he court is not engaging in a prophylactic exercise to guarantee

each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each

defendant a fair trial, with constitutionally competent counsel.").

    "'To avoid the shoals of ineffective assistance, an attorney's judgment need not

necessarily be right, so long as it is reasonable.'" *Virgin Islands v. Weatherwax*, 77 F.3d 1425,

1435 (3d Cir. 1996) (quoting *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993)).

"Judicial scrutiny of counsel's performance must be highly deferential" as "[t]here are countless

ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689.

4

In *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005), the Third Circuit addressed how district courts should proceed in assessing whether an attorney's performance was constitutionally deficient under the first *Strickland* prong.  In *Thomas*, the Court held, *inter alia*, that:

> [s]imilar to instances in which a court disposes of an ineffective assistance of counsel claim by analyzing the prejudice prong without considering whether counsel's performance was deficient, it is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy. . . . Put differently, no hearings as to counsel's strategy are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds.

*Id*. at 501, n.10.

### 2.    Failure to Challenge Testimony Regarding "Intent to Distribute"

In his Amended Motion, Petitioner, through habeas counsel, claims that trial counsel Kenneth C. Edelin, Jr. was constitutionally ineffective for failing to challenge expert testimony by Detective Charles Meissler.  (Pet'r Mem. 3.)  Petitioner makes two specific arguments in this regard.  First, he says Det. Meissler's testimony violated Federal Rule of Evidence 704(b) by improperly referring to Petitioner's state of mind, and trial counsel was ineffective for failing to seek to either strike the testimony or obtain a curative instruction.  (*Id*. at 3-4.)  Second, Petitioner claims that trial counsel was ineffective for failing to offer testimony which might counter Det. Meissler's assertion that Petitioner's possession of several different illicit substances suggested involvement in drug distribution.  (*Id*. at 6.)

Petitioner contends that Det. Meissler's testimony improperly referred to Petitioner's intent to distribute drugs.  Federal Rule of Evidence 704 states, in relevant part: "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have

5

a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b).  Since intent would be a mental state that "constitutes an element of the crime charged," the opinion of a witness as to Petitioner's intent would be improper and, consequently, inadmissible.

Petitioner's argument suffers from a crucial, and indeed fatal, flaw:  Det. Meissler did not render an opinion with regard to the mental state of Petitioner.  Det. Meissler did note, in his capacity as an expert on the packaging, sale and distribution of illegal drugs that the possession of three different drugs, a gun, and over a thousand dollars in cash was consistent with drug distribution.  (Apr. 17, 2006 Trial Tr. 130 (on file with court).)  Petitioner does not contest the fact that Det. Meissler never directly referred to Petitioner's mental state during the course of his testimony.

Petitioner analogizes the instant case to *United States v. Watson*, 260 F.3d 301 (3d Cir. 2001).  In *Watson*, the Third Circuit ruled that the Government's elicitation of expert testimony about the defendant's intent to distribute was improper.  *Id.* at 309-10.  However, the *Watson* Court was clear that "[e]xpert testimony concerning the modus operandi of individuals involved in drug trafficking does not violate Rule 704(b)."  *Id*. at 308.  Indeed, the Court noted, "[i]t is well established that experts may describe, in general and factual terms, the common practices of drug dealers."  *Id*. at 309.  The proscription against testifying about a defendant's intent to distribute, the *Watson* Court concluded, applies "only as to the last step in the inferential process - a conclusion as to the defendant's mental state.  *Id*. (internal quotation marks omitted).  It is then, and only then, "that Rule 704(b) commands the expert to be silent."  *Id*.  (internal quotation marks omitted).

Det. Meissler never opined as to Petitioner's mental state.  He never stated that Petitioner had the intent to distribute drugs.  He merely pointed out that certain characteristics of Petitioner's behavior were consistent with drug dealing.  Det. Meissler's statements were well within the range of permissible testimony under Rule 704(b).  They were designed to provide jurors with information about discernible patterns in drug use and distribution.  The critical "last step in the inferential process" remained the sole province of the jury.

Petitioner argues that counsel was ineffective for failing to object to Det. Meissler's testimony or move for a curative instruction.  This argument is specious.  No testimony was introduced that warranted such an objection or motion.  Indeed, Petitioner here credits the Government with "phrasing its questions to Det. Meissler to elicit answers that did not violate Rule 704(b)."  (Pet'r Mem. 4 n.2.)  The Government did not attempt to elicit improper testimony, and the Government's expert witness did not offer improper testimony.  Accordingly, there was no objection that trial counsel should have made.  Trial counsel's performance was not deficient.  Petitioner's claim is devoid of merit.

Petitioner's second claim asserts that trial counsel should have introduced testimony that many drug users simultaneously use crack cocaine and heroin.  Petitioner testified that this was his preference as a drug user and he points to Det. Meissler's testimony that the simultaneous use of crack cocaine and heroin was less likely than simultaneous use of powder cocaine and heroin.  Even if trial counsel had offered evidence that crack cocaine and heroin can be used simultaneously, we fail to see how this fact would have changed the outcome of this case.

Det. Meissler testified that Petitioner's possession of these drugs, powder cocaine, crack cocaine, and heroin, along with a gun, a large amount of cash, and the absence of any

7

paraphernalia for drug use was consistent with possession with an intent to distribute.  He

discussed in depth the patterns of recreational drug use and how drug dealers often have a "variety

of drugs because they don't know" the preferences of their prospective clientele.  (Apr. 17 Trial

Tr. 130.)  Perhaps, if Petitioner had been arrested in possession of only crack cocaine and heroin,

the introduction of testimony that they could be used together might have helped support

Petitioner's claim that he possessed them solely for personal use.  However, Petitioner was

arrested in possession of three different drugs.  Petitioner does not explain how the introduction of

such evidence would have countered the effect of Det. Meissler's testimony and the other

evidence of Petitioner's guilt.

Contrary to Petitioner's assertions, Det. Meissler's testimony did not refer to the

simultaneous possession of two illegal drugs–it referred to the simultaneous possession of three

distinct substances.  Petitioner has attached an affidavit by a suggested witness, Anthony Hodges,

who was familiar with Petitioner's pattern of personal drug abuse.  (Pet'r Mem. Attach. A. ¶ 8.)

Hodges does not describe the use of three drugs–he refers only to the mixing of crack cocaine and

heroin.[4]

Trial counsel was not ineffective for failing to raise an argument that would have had little

probative value.  Although trial counsel could have confronted Det. Meissler with evidence that

individuals do simultaneously use crack cocaine and heroin, considering all of the evidence, we

fail to see how this would have, in any way, affected the result in this case.

In order to demonstrate prejudice under the *Strickland* standard, Petitioner "must show

---

[4]  Interestingly, Hodges also mentions that he knew that, at one time, Petitioner distributed drugs to support his habit.

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 695.  Even if one were to accept the argument that counsel's performance was deficient, Petitioner cannot show even the slightest probability that the outcome of the proceeding would have been different.  Petitioner was convicted of possession with intent to distribute because he possessed three distinct illicit substances, a gun, and over a eleven hundred dollars in cash in a high drug-trafficking area.  The evidence and testimony to establish that Petitioner was guilty of the charged crimes was overwhelming.  Simply noting that some individuals simultaneously use crack cocaine and heroin, or even showing that Petitioner had done so in the past, would not have undermined the strength of the Government's case against Petitioner.  Petitioner did not suffer prejudice as a result of alleged errors of counsel.  Habeas relief will not be granted.

### 3. Other Ineffective Assistance of Trial Counsel Claims

Ground Three of Petitioner's pro se Motion includes a litany of ineffective assistance of counsel claims.  According to this list, Petitioner's trial counsel:  (1) failed to "contact or interview [an] eyewitness," specifically a female police officer whose testimony Petitioner maintains "would have contradicted both police officers that testified at trial"; (2) failed to "carefully read over [the] police report"; (3) failed to "request a summary of [the] drug expert witness' testimony"; (4) failed to "file a motion to block [Meissler's] testimony"; and (5) failed to request that the jury be instructed as to lesser offenses.  (Pet. 6-7.)

Petitioner's first claim is baseless.  The sole mention in the record of any female police

officer is in Petitioner's own testimony.[5]  (Apr. 18 Trial Tr. 22.)  There exists no record of any female police officer having appeared at the scene of Petitioner's arrests.  We cannot fault trial counsel for failing to contact or interview a witness about whom there is no information, and whose very existence is questionable.

Petitioner's second claim similarly lacks merit.  Petitioner argues that trial counsel failed to read the police report and challenge testimony that a second officer was present at the scene of his arrest.  (Pet. 7.)  Petitioner, however, does not contest the fact that there was another officer present at the scene; and he testified to that effect.  (Apr. 18, 2006 Trial Tr. 20.)  Moreover, this other officer testified at trial, was cross examined by trial counsel, and the inconsistencies in the testimony of the police officers was highlighted by trial counsel.  We cannot conclude that Petitioner's counsel was ineffective for pursuing what was an objectively reasonable and sound trial strategy.

Petitioner next argues that counsel was ineffective for failing to obtain a summary of Det. Meissler's testimony.  Petitioner claims that, had such a summary been obtained, he could have brought in a series of drug users who regularly use a combination of drugs to contradict Det. Meissler's testimony.  We need not consider the significant logistical, evidentiary and constitutional problems that such a parade of witnesses might implicate, because it is unclear how such testimony would have undermined the testimony of Det. Meissler.  Furthermore, it is unclear how obtaining a summary of Det. Meissler's testimony would have made it easier for Petitioner and his counsel to pursue this questionable strategy, or how failing to obtain such a summary

---

[5] Petitioner testified that he did not have a gun in his possession on this day.  He testified that the female officer on the scene was holding a gun and she stated "Look what I found," indicating that it was Petitioner's gun.

impeded their ability to do so.  Petitioner and his counsel had advance knowledge that Det. Meissler would testify as an expert on the packaging and distribution of illegal drugs.  They knew that his testimony would be that possessing three different illegal drugs, along with a gun and over eleven hundred dollars in cash, in a high drug area is consistent with possession with an intent to deliver the drugs.  No more information was needed to allow Petitioner and counsel to pursue the trial strategy that Petitioner here outlines.  Counsel's handling of the Government's expert was eminently reasonable.  It was not ineffective.

Petitioner next argues that counsel was ineffective for failing to challenge Det. Meissler's status as an expert witness.  (Pet. 7.)  We reject this argument.  Such a challenge would have been meritless.  Trial counsel had Det. Meissler's curriculum vitae.  He knew that Det. Meissler had been qualified as an expert in state and federal court on prior occasions.  Det. Meissler outlined his qualifications for the jury under oath.  (Apr. 17 Trial Tr. 122-25.)  Given Det. Meissler's vast experience, it was completely reasonable for Petitioner's trial counsel to stipulate to Det. Meissler's status as an expert.  To have cross examined Det. Meissler on his qualifications or to have objected to those qualifications would have simply highlighted those qualifications to Petitioner's detriment.

Petitioner also claims that counsel was ineffective for failing to request that the Court instruct the jury on "lesser included offenses."  (Pet. 7.)  Based upon Petitioner's own testimony, he was obviously guilty of the lesser included offense of simple possession of controlled substances.  The question of Petitioner's guilt on the charge of possession with intent to distribute was for the jury to answer.  If they believed Petitioner, they could find Petitioner not guilty.

Clearly, Petitioner's counsel did not seek a charge on simple possession because Petitioner

would have been convicted of simple possession offenses.  Petitioner never denied that he

possessed illicit substances; in fact, he testified at trial that "[t]he drugs are mine.  All the drugs

that they say they found or I had, I had."  (Apr. 17 Trial Tr. 5.)  The disputed issue of fact at trial

was Petitioner's intent.  Petitioner's counsel pursued a "sound trial strategy" which permitted the

jury to acquit Petitioner entirely.  Petitioner's claims that trial counsel was ineffective lack merit.

Accordingly, they are denied.

### 4.    *Ineffective Assistance of Appellate Counsel*

Petitioner further claims that appellate counsel failed to "adequately research [the] case

and brief issues," and failed to challenge his convictions for firearm possession and possession of

narcotics with the intent to distribute.  (Pet. 7.)  It is true that appellate counsel discontinued

Petitioner's appeal to the Third Circuit.  After the appeal was filed (No. 06-3713), appellate

counsel determined that there were no meritorious issues to litigate.  Appellate counsel consulted

with Petitioner, and Petitioner agreed to a voluntary dismissal of his appeal under Federal Rule of

Appellate Procedure 42(b).  Petitioner does not claim that his agreement to dismiss the appeal was

obtained through any improper means.

Petitioner claims that there was no evidence to support his conviction for possession with

intent to distribute aside from testimony.  (Pet. 7.)  Petitioner's claim is frivolous.  Defendant

admitted possessing the drugs and Det. Meissler provided the expert testimony with regard to

Petitioner's intent.  Clearly, the evidence was sufficient to support the conviction.  "There can be

no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a

meritless argument."  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Petitioner also claims that appellate counsel was ineffective for failing to challenge his

firearms conviction, arguing that the Government did not meet its burden of proving that the firearm was being actively employed.  (Pet. 7.)  To be guilty of violating 18 U.S.C. § 924(c)(1) a defendant need only possess a firearm in furtherance of a drug trafficking crime.  The statute does not require that the Government prove "active employment."  The Government offered testimony that Petitioner possessed the firearm in question and that he possessed it in furtherance of drug trafficking.  Since the Government proved all elements of this charge, an appeal on this ground would have been meritless.  Appellate counsel was not ineffective for failing to raise such a claim. *See Sanders*, 165 F.3d at 253.  Accordingly, Petitioner's claim that his appellate counsel was constitutionally ineffective is denied.

### B.       Suppression Hearing Claim

Petitioner argues in his pro se Petition ("Ground One") that he was convicted because of the "use of evidence gained pursuant to an unconstitutional search and seizure."  (Pet. 6.) Petitioner maintains that "[t]he drugs said to have been the cause of the search were found after or during the search."  (*Id.*)  Neither Petitioner nor his habeas counsel elaborates on this claim.

Petitioner's trial counsel filed a motion to suppress evidence obtained as a result of illegal searches and seizures conducted by law enforcement on March 27, 2006.  (Def.'s Mot. Suppress, ECF No. 22.)  Petitioner's counsel claimed that those seizures were not supported by "reasonable suspicion."  (*Id*. at 6.)  The motion to suppress was denied in a Memorandum and Order dated April 13, 2006.  (Memorandum & Order, ECF No. 41.)  There is no reason to revisit our findings in that Memorandum and Petitioner has suggested none.  Accordingly, Petitioner's claim is denied.

**C.**     *Brady* **Claim**

Petitioner argues, in his pro se Petition, that the Government failed to disclose evidence favorable to him, and claims that the "testimony of the said backup officer Johnson states drugs were found after or during search and not before."  (Pet. 6.)  We interpret Petitioner's claim as an invocation of the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), that prosecutors cannot withhold exculpatory evidence from criminal defendants.

Petitioner does not specify what evidence was allegedly withheld by the Government. Under the circumstances, Petitioner's claim must be denied.

**D.**     **Court's Failure to Instruct Jury**

Petitioner claims that the Court erred in failing to instruct the jury that "the expert witness was not qualified to testify on the ultimate issue of intent," and that the jury could convict Petitioner for lesser offenses ("Ground Four").  (Pet. 8-9.)  In this section of his Petition, Petitioner also claims that the Court abused its discretion in allowing Det. Meissler to testify.  (*Id.* at 9.)

The Court was not required to instruct the jury that Det. Meissler was not qualified to testify about Petitioner's intent because Det. Meissler never actually testified about Petitioner's mental state.  The jury instructions on expert testimony here were standard jury instructions.  The jury was advised that they should consider the qualifications and the reliability of the expert and the facts upon which the expert's opinion is based.  The jury was told that they could accept the expert opinion or reject it.  The instruction was perfectly proper.  Petitioner's claim that the Court somehow erred in giving this instruction is baseless.

Similarly, the Court had no obligation to instruct the jury as to lesser included offenses.

14

Petitioner's trial counsel never requested such an instruction.  Petitioner's guilt as to those lesser included offenses was established by Petitioner's own testimony.  It would have been inappropriate for the Court to *sua sponte* inform the jury that it could convict Petitioner of those uncharged offenses without any request from counsel.  Had Petitioner's counsel requested such an instruction, or had the Government indicted Petitioner on simple possession counts, we would have instructed accordingly.  The absence of a request from counsel was obviously part of counsel's trial strategy.

Finally, we note that Petitioner's claim that the Court abused its discretion in allowing an expert on drug distribution to testify is similarly without merit.  Det. Meissler was a well qualified expert.  Petitioner's attorney stipulated to Det. Meissler's qualifications as an expert witness. (Apr. 17 Trial Tr. 122.)  It was not an abuse of discretion for the Court to permit Det. Meissler to testify.  It would have been an abuse to have precluded him from testifying.

Accordingly, Petitioner's claims regarding the Court's jury instructions and decision to allow Det. Meissler to testify are denied.

### E.     Certificate of Appealability

Finally, the Government requests an order that no certificate of appealability issue. (Gov't. Mem. 14-15.)  The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge must state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253.  If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

Third Circuit L.A.R. 22.2.  Under 28 U.S.C. § 2253, a petitioner seeking a certificate of

appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has raised no viable claims, and we are satisfied that no reasonable jurist would disagree with our assessment. Therefore, a certificate of appealability will not issue.

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's Motions are denied. There is no basis for holding an evidentiary hearing and no basis upon which to issue a certificate of appealability.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

16